## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| ANTHONY MANNUCCI, JR., a/k/a | * | CHAPTER 13 |
| ANTHONY MANNUCCI and | * | |
| MICHELLE M. MANNUCCI, | * | |
| Debtors | * | |
| | * | CASE NO. 1:12-bk-07138MDF |
| LAWRENCE G. FRANK, Trustee in | * | |
| bankruptcy for | * | |
| ANTHONY MANNUCCI, JR., a/k/a | * | |
| ANTHONY MANNUCCI and | * | |
| MICHELLE M. MANNUCCI, | * | |
| Movant | * | |
| | * | |
| v. | * | |
| | * | |
| ANTHONY MANNUCCI, JR., a/k/a | * | |
| ANTHONY MANNUCCI and | * | |
| MICHELLE M. MANNUCCI, | * | |
| Respondents | * | |

## OPINION

Before me is a Motion to dismiss the above-captioned Chapter 13 case of Anthony and

Michelle Mannucci ("Debtors"). The Motion was filed by Lawrence G. Frank ("Frank"), Trustee

in a pending Chapter 7 bankruptcy case filed by Debtors on April 10, 2007 at(the "2007 Case").

In his Motion, Frank asserts that Debtors may not maintain simultaneous bankruptcy cases under

Chapter 13 and Chapter 7 and that Debtors filed the within Chapter 13 case in bad faith. For the

reasons discussed below, the Motion will be granted.

### I. Procedural and Factual History

Debtors filed the 2007 Case under Chapter 13 on April 10, 2007, but converted the case

to Chapter 7 in August 2009. On Schedule B of Debtors' petition, they reported that they owned

1127 shares in MSC Industrial Supply Company ("MSC") and that the value of the shares was

approximately $45,000.00. On Schedule C, Debtors claimed an exemption in the stock in an amount of $16,855.00. On August 17, 2007, Debtors confirmed their Chapter 13 plan, which proposed to pay the sum of $714.78 per month for sixty months or a total of $42,886.44. According to the terms of the plan, these payments would pay all allowed unsecured claims in full. Debtors' confirmed plan also provided that "[t]itle to the debtor[s'] property shall revest in the debtor[s] upon confirmation of a plan . . . ." Title in the MSC stock therefore vested in Debtors on August 17, 2007. Debtors paid approximately 30% of the scheduled plan payments before the 2007 Case was converted to Chapter 7 on October 2, 2009.

At the Chapter 7 meeting of creditors held November 6, 2009, Debtors informed Frank that on May 30, 2008 they sold the MSC shares for $53,689.47. Debtors did not obtain court approval for this sale. In response to this disclosure, Frank filed a complaint against Debtors on March 22, 2010 seeking to recover the sum of $28,145.00, which represented the difference between the sale price of the stock and the amount of Debtors' allowed exemption. Frank also filed a complaint to deny Debtors their discharge. Prior to trial on either complaint, the parties filed a motion to approve a compromise in which Debtors agreed to pay the estate $15,721.32 in full satisfaction of the claim, and Frank agreed that Debtors could be granted a discharge. An order approving the compromise was entered on December 1, 2010.

After Debtors failed to pay the agreed upon amount within a year, Frank initiated an adversary proceeding seeking judgment against Debtors. On March 14, 2012, an order for default judgment in the amount of $15,721.32 plus costs in the amount of $293.00 for a total of $16,014.32 was entered against Debtors. On November 30, 2012, Frank moved for a Rule 2004

2

examination for the purpose of discovering assets.[1]  On December 13, 2012, Debtors filed the instant Chapter 13 case (the "2012 Case").

In the schedules filed in connection with the 2012 Case, Debtors list the Chapter 7 estate's claim of $15,721.32 as the sole unsecured claim.  None of the unsecured claims listed in the 2007 Case have been included in the current case. Debtors' lone secured debt is to Credit Acceptance for approximately $9000 secured by a 2002 Saturn L200 sedan valued at approximately $3000. Debtors' plan provides for regular payments to be made to Credit Acceptance directly by Debtors.  It also proposes to pay Frank's unsecured claim in full through payments of $330.73 per month for sixty months.

On January 7, 2013, Frank moved to dismiss the 2012 Case.  Debtors answered the motion on January 31, 2013, and a hearing was set for February 12, 2013.  The parties appeared at the scheduled hearing and agreed that the matter could be submitted on briefs.  Briefs have been filed, and the matter is ready for decision.[2]

## II. Discussion

Frank filed his motion pursuant to 11 U.S.C. § 1307(c), which provides for dismissal of a Chapter 13 case "for cause." Frank asserts that Debtors cannot maintain two bankruptcy cases simultaneously and, alternatively, that Debtors' 2012 Case was filed in "bad faith."

---

[1]An Order granting the Rule 2004 Motion was entered on December 20, 2012 scheduling the examination to be held on December 28, 2012.

[2]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334.  This matter is core pursuant to 28 U.S.C. §157(b)(2)(A).  This Opinion constitutes findings of fact and conclusions of law required to be made by Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

3

Addressing Frank's first argument, there is no specific statutory provision barring simultaneous bankruptcy cases. Nevertheless, a majority of courts have found that filing a Chapter 13 case while a Chapter 7 case is pending constitutes an abuse of the bankruptcy process. *See Sood v. Business Lenders, LLC,* Civ. Action No. MJG-11-2528, 2012 WL 2847613, *4 (D. Md. July 10, 2012); *In re Lord,* 295 B.R. 16, 18 (Bankr. E.D.N.Y. 2003) (citing cases). Courts adopting a per se ban on simultaneously filed cases frequently rely on *Freshman v. Atkins*, 46 S. Ct. 41, 41 (1925), in which the Supreme Court held that the pendency of the first bankruptcy case barred consideration of the second case when second case included the same debts as the first. Other courts have adopted a more nuanced approach when each pending case relates to different assets and different debts. *In re Ragsdale*, 315 B.R. 691, 693 (Bankr. E.D. Mich 2004) (citing *In re Tauscher*, 26 B.R. 99 (Bankr. E.D. Wisc. 1982). This view is consistent with *Atkins,* which did not dismiss the second case, but only stated that two cases addressing the same debt cannot be prosecuted simultaneously. *Transamerica Credit Corporation v. Bullock (In re Bullock),* 206 B.R. 389, 392–93 (Bankr. E.D. Va.1997).

Many courts rejecting a per se bar to simultaneous cases have permitted the second filed case to proceed if a discharge had been entered in the Chapter 7 case and the case remained open to complete administrative tasks, such as the filing of a trustee's final report. *See In re Turner,* 207 B.R. 373, 378 (B.A.P. 2d Cir. 1997) (noting agreement among courts that a Chapter 13 case could not be filed until the discharge was entered in the Chapter 7 case). A prior case containing significant issues to resolve compels a different result. The Seventh Circuit has held that a debtor should not be permitted to initiate a second case while litigation to deny a debtor's discharge is pending in the first case.

4

> This is not a case in which the Chapter 7 proceeding was finished except for some minor technicalities at the end, like the filing of a trustee's final report. Allowing [the debtor] to proceed with the Chapter 13 case significantly affects the Chapter 7 trustee's ability to administer the estate, because it will change how much each creditor gets paid if the [claims of the plaintiffs in the nondischargeability action] are resolved through the Chapter 13 process.

*In re Sidebottom*, 430 F.3d 893, 899 (7th Cir. 2005). So even courts that reject a per se bar to maintaining simultaneous cases permit the second case to go forward only when it does not interfere with the administration of the first case.

In the within case, Debtors entered into an agreement with Frank to settle two adversary proceedings against Debtors – one to deny Debtors' discharge and the other to recover an alleged fraudulent transfer. Both of these actions were premised on Debtors' sale of the MSC stock during the pendency of the Chapter 13 phase of the 2007 Case. According to the Amended Motion for Leave to Compromise Controversy between the Estate and the Debtors, Debtors and Frank agreed to settle the matter by Debtors paying the sum of $15,721.32 by November 3, 2011. The Amended Motion also provided that Debtors would receive a discharge. Although a separate stipulation is not of record, Debtors did not contest the Amended Motion or otherwise suggest that Debtors did not agree to the compromise described in the Amended Motion.[3] The record is

---

[3]Based on the record before the Court, it is not readily apparent why the sale of the stock in 2008 would have been fraudulent. Under the terms of the confirmed Chapter 13 plan in the 2007 Case, property of the estate vested in Debtors upon confirmation. The only property committed to funding the plan was "future income."Therefore, at the time Debtors sold the MSC shares, they no longer were property of the estate. Under 11 U.S.C. § 348(f)(1)(A), property of the estate in a converted case consists of property in the estate when the original petition was filed that remains in a debtor's possession or control on the date of conversion. Debtors' shares in MSC were not in the possession or control of Debtors when the case was converted. This defense was not raised by Debtors, however, and they agreed to settle the adversary cases by the payment of a specified sum. There are no grounds on this record to find that Debtors are not bound by this agreement.

unclear, however, whether entry of the discharge was contingent upon payment of the funds to Frank. Both parties acted in accordance with this implied understanding. Therefore, because the agreed upon sum had not been paid in the converted case, Debtors were not yet eligible to receive a discharge.

By filing the 2012 Case, in which the only unsecured creditor listed is Frank in his capacity as Chapter 7 trustee, Debtors are seeking to satisfy the creditors of their Chapter 7 estate through their Chapter 13 plan. Accordingly, if the Chapter 13 case were permitted to proceed, Debtors will not obtain a discharge in their Chapter 7 case until all of the payments required under their plan are paid in the Chapter 13 case. Here, the Chapter 13 case is not addressing assets and debts different from those in the Chapter 7 case. To the contrary, the Chapter 13 plan is the proposed mechanism for funding the payment of Chapter 7 claims. As noted by the bankruptcy court in *In re Hodurski*, 156 B.R. 353 (Bankr. D. Mass. 1993), even courts that have not adopted a strict approach to simultaneous bankruptcy cases agree that a debtor is prohibited from filing a Chapter 13 case until after a discharge is entered, or its entry is "imminent," in the pending Chapter 7 case. *Id.* at 356-57.

> The problems that simultaneous cases raise include confusion among creditors as to the necessity and procedure for filing of claims, difficulties in determining in which estate assets belong, and the entitlement of the Chapter 7 trustee and other professionals to fees and commissions. Moreover, if the Chapter 7 case is a so-called "asset" case in which the trustee is liquidating assets or recovering voidable transfers for distribution to creditors, creditors may not wish to disrupt that

6

proceeding or see assets turned over to the Chapter 13 estate, preferring instead to see the Chapter 7 completed in order to obtain their *pro rata* distribution.

*Id.* at 356.

On facts similar to the within case, the Bankruptcy Court for the Eastern District of Missouri dismissed a debtor's second petition when the debtor had an open prior case in which the discharge had been vacated. *In re Cole*, No. 07-41602-659, 2007 WL 2908195, *2 (Bankr. E.D. Mo. Sept. 12, 2007). The Court observed that the debtor's first case remained open not for administrative purposes, but because the debtor had failed to pay a judgment entered in favor of the Chapter 7 trustee. In dismissing the case, the Court noted that the debtor's actions delayed payment to unsecured creditors and that the proposed Chapter 13 plan would further delay payment. *Id.* Similarly, in this case Debtors filed the Chapter 13 case to satisfy obligations incurred in the prior Chapter 7 case. If Debtors are permitted to proceed with their Chapter 13 case, it is likely to cause confusion among Debtors' Chapter 7 creditors. Additional administrative expenses will be incurred because the liquidation of the Chapter 7 claims will be subject to an additional layer of Chapter 13 administrative expenses. Accordingly, Frank's motion to dismiss will be granted.

Having determined that under the facts of this case it would be an abuse of the bankruptcy process for Debtors to maintain two pending bankruptcy cases, I do not reach the issue of whether Debtors filed the Chapter 13 petition in bad faith. I do note, however, that Frank granted Debtors a year to pay the compromised amount, but they failed to make any payments during that period.

7

An appropriate order will be entered.

**By the Court,**

Mary D France

Chief Bankruptcy Judge

Date:  June 27, 2013